Rosina Di Orio *et al. vs.* Salvatore Cenci *et al.*

JULY 5, 1934.

Present: Stearns, C. J., Sweeney, Murdock, and Hahn, JJ.

Hahn, J.  This case was heard in the Superior Court on appeal from a decree of a probate court admitting to probate the will of Elviro Cenci.  The jury rendered a verdict breaking the will and made special findings that the testator was of unsound mind and unduly influenced at the time of making his will.  The case is before this court on exceptions of the appellees as follows:  (1) to the refusal of the trial court to direct a verdict for appellees;  (2) to the denial of appellees' motion for a new trial and (3) to rulings on evidence during the course of the trial.

The will was executed December 30, 1929.  By its terms the testator left the bulk of his estate to his four sons, three

of whom survived him. To each of his three daughters he left the nominal bequest of $5. These daughters, the present contestants, introduced testimony to support the allegations that their father was of unsound mind for some time before and at the time when he made his will, and that he was subject to the undue influence of his son, Salvatore, one of the appellees. The appellees denied the allegations and presented witnesses in support of their denials.

Without setting forth in detail all the evidence presented by the parties in support of their contentions, we note the following uncontradicted facts set forth in medical and hospital records: In May, 1927, the testator attempted to commit suicide. (There was testimony that he had stated that his children were all against him and that he threatened to "take someone else" with him.) A medical examination made August 20, 1927, showed that he had what is technically known as a "wet brain" from overindulgence in alcohol. In September, 1930, he slashed his daughter-in-law, who was keeping house for him and for her husband, Salvatore Cenci, with a razor under the delusion that she was trying to poison him. State psychiatrists who examined him immediately thereafter found him to be a paranoiac and he was confined to the State Hospital for Mental Diseases until the time of his death. In view of these facts, there was no error in the denial by the trial justice of the appellees' motion for a directed verdict. *Reddington* v. *Getchell*, 40 R. I. 463.

The evidence above set forth, taken in conjunction with the irrational character of the will—by which the testator disinherited not only his married daughters but also his youngest daughter, Bernice, who until January, 1930, kept house for him for nominal wages (which appeared to be her only means of support) and who had given him no reasonable ground for offense—, furnishes ample grounds to support the jury in their finding that testator lacked testamentary capacity. *Mullen* v. *McKeon*, 25 R. I. 305. There was also sufficient evidence to justify their finding of undue influence. Their verdict is sustained by the rescript

of the trial justice which concludes: "In this particular case . . . the court feels just as the jury did, namely, that the will in question is not the will of Elviro Cenci." Under the rule expressed in *Wilcox* v. *Rhode Island Co.*, 29 R. I. 292, we will not interfere with the court's action in denying the appellees' motion for a new trial unless clearly erroneous. The exception is overruled.

Certain exceptions to rulings of the court on evidence were pressed at the hearing in this court, particularly those to the rulings permitting the testator's daughters, Amelia and Rosina, to state their opinions as to their father's mental condition, the appellees contending that said rulings upon the questions asked are contrary to the rule enunciated in *Hopkins* v. *Wheeler*, 21 R. I. 533.

An examination of the record indicates that each of these witnesses was examined at length in regard to the acts and statements of the testator in her presence, and was cautioned to make no statement regarding him except as based upon what she personally observed. After the examination of Amelia Passerelli, the court framed a question for the witness in the following language: "Basing her opinion if she can form one upon her observation of her father at the times and under the conditions when she saw him was her father in her opinion of sound or unsound mind?" to which the witness replied: "Well, to me, his mind was unbalanced." To this question and answer no direct exception was taken. After the examination of Rosina Di Orio, the court again framed the question in substantially the same words, and allowed an exception thereto.

The question as framed was objectionable in that it did not confine the witness, in expressing her opinion, to facts which she had observed and had previously testified to. However, as the testator's incapacity to make a will was shown by the great preponderance of the evidence, aside from the opinions on that question as expressed by the testator's daughters, the erroneous ruling cannot be considered prejudicial. In 4 C. J. at 975 it is said: "A rule which has been stated and applied many times by reviewing

courts is that the admission of improper and objectionable evidence is harmless error where the fact involved is fully and clearly established by other evidence which is competent." It must also be borne in mind that the jury found evidence of undue influence which, in itself, was sufficient ground for a verdict for the appellants.

The other exceptions have been considered and are found to be without merit.

All the appellees' exceptions are overruled and the case is remitted to the Superior Court for further proceedings following the verdict.

SWEENEY, J., dissenting. In my opinion, appellees' exceptions to the questions asking testator's two daughters to "state their opinions as to their father's mental condition" should be sustained. The rule governing the allowance of questions to a non-expert witness on the subject of mental capacity was announced in 1900 in the case of *Hopkins* v. *Wheeler*, 21 R. I. 533, when this court said: "The opinions which were allowed to be given by the witnesses, other than the attesting witnesses, were based on facts within the knowledge of the witnesses to which they had previously testified, and were simply the conclusions of the witnesses on such facts. The uniform practice in this court has been to permit non-expert witnesses to testify to facts which they had observed bearing on the mental condition of the testator, and then to give their opinions as to his mental condition derived from those facts."

This rule creates an exception to the general rule that a lay witness is permitted to state only facts within his personal knowledge, and under ordinary circumstances his opinion as to the matter in issue cannot be received. 22 C. J. 485. This rule should be rigidly applied.

A statement of facts by a witness is absolutely necessary in a will case so that the judge, jurors and parties may determine whether the opinion is a reasonable inference from the facts testified to. Even when an expert witness is asked for his opinion, the facts upon which he bases it must

appear in evidence or be stated in a hypothetical question. 22 C. J. 602.

The appellees' exceptions to the questions relating to the account of the guardian of the testator should be sustained. After Mr. Cenci was committed to jail for the assault upon his daughter-in-law, his son Vincent was appointed guardian of his estate. On November 18, 1930, the three contestants agreed, in writing, that their brother be appointed such guardian. The expenses incurred by the guardian had no bearing upon the competency of Mr. Cenci to make a will and the introduction of this extraneous matter confused the issues and was prejudicial to the appellees.

In the will case of *Carpenter* v. *Carpenter*, 46 R. I. 433, this court sustained proponents' exception to the admission of improper testimony and ordered a new trial. The same rule should be applied in this case.

*Charles A. Kiernan*, for appellants.

*Knauer & Fowler, Luigi De Pasquale*, for appellees.